# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

FARGO ELECTRONICS, INC.,

                Plaintiff,

v.

IRIS, LTD., INC.,

                Defendant.

Civil No. 04-1017 (JRT/FLN)

**MEMORANDUM OPINION
AND ORDER DENYING
DEFENDANT'S SUMMARY
JUDGMENT MOTIONS**

Robert J. Gilbertson and Bruce D. Manning, **ROBINS KAPLAN MILLER & CIRESI LLP**, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402-2015, for plaintiff.

J. Derek Vandenburgh and Brian W. Hayes, **CARLSON CASPERS VANDENBURGH & LINDQUIST**, 225 South Sixth Street, Suite 3200, Minneapolis, MN 55402, for defendant.

This is a patent case between a manufacturer of photo identification card printers and one of its former distributors. In its Second Amended Complaint, plaintiff Fargo Electronics, Inc. asserted claims of infringement of two patents – U.S. Patent Nos. 5,755,519 ("the '519 patent") and 6,152,625 ("the '625 patent"), as well as trademark infringement and various other federal and state unfair competition claims. Defendant Iris Ltd., Inc. counterclaimed for declaratory judgment of non-infringement, patent invalidity, and unenforceability. On November 30, 2005, the Court granted defendant's motion for partial summary judgment on plaintiff's claim of infringement of the '519 patent. The only remaining patent dispute concerns whether defendant's FPYMCKO-250 ribbon ("the 250 ribbon") infringes the '625 patent. Currently before

the Court are three motions for summary judgment filed by defendant.  For the reasons explained below, the Court denies defendant's motions.

**BACKGROUND**

Plaintiff Fargo Electronics, Inc. is engaged in the design, manufacture, and sale of dye-sublimation identification ("ID") card printers and ribbons, as well as other supplies for use with its ID card printers.  Plaintiff's most successful product is Fargo Ribbon No. 81733 ("the 81733 ribbon"), a full-color printer ribbon.  Defendant Iris Ltd., Inc. has sold identification card printers and accessories, including the 81733 ribbon and a generic version of the 81733 ribbon, defendant's RibbonChoices No. 81733G ribbon ("the 81733G ribbon").

Because plaintiff makes various types of ink ribbons to use in its printers, it is important for the printer to be able to identify which type of ribbon is being used. Plaintiff owns two patents relating to sensors and identifier indicia that enable its printers to identify the type of ribbon.  The '519 patent and the '625 patent are entitled "Printer Ribbon Identification Sensor" and "Sensor Hub for a Print Ribbon Supply Roll and Method," respectively.

The '519 patent is directed to a "sensor for sensing and identifying characteristics of a printer ink ribbon when a ribbon supply roll is inserted into a printer and operated." Metal pins are arranged in a given sequence, according to ribbon type, in a circular pattern on the end of the ribbon roll core, or hub.  The sensor, which is attached to the printer, senses the pins and sends a signal to a printer controller, in which is stored a code

for the desired ribbon for a particular type of print job.  The signals are compared to the code to determine if the correct ribbon was installed.

The '625 patent describes "a sensor hub for a print ribbon supply roll" which includes pins "permanently secured" in the apertures (in contrast to the '519 patent, in which the pins are "removable and replaceable").  The "permanently secured" feature ensures that the pins do not fall out during shipping or use, and reduces human error because the pins can be molded together with the apparatus holding the pins.  Also, the sensor is attached to the ribbon supply roll itself, as opposed to the sensor in the '519 patent, which is attached to the printer.

The '625 patent application was filed on July 27, 1999 in the name of Michael Oliverio.  Oliverio was the president of Magnacolor, which is a competitor to plaintiff.  On September 1, 1999, shortly after Magnacolor introduced its competing ribbon, plaintiff sued Magnacolor for infringement of its '519 patent.  The parties engaged in settlement discussions, and on January 28, 2000, the Oliverio patent application was assigned to plaintiff.  On November 28, 2000, the Oliverio application issued as the '625 patent.

Defendant sold plaintiff's products exclusively for many years, but in September 2003, defendant began making and selling the 81733G ribbon, designed to compete with plaintiff's 81733 ribbon.  After plaintiff learned of the sale of these ribbons, it terminated defendant's distribution contract and instituted this lawsuit.  Plaintiff filed a motion for a preliminary injunction, asserting that the 81733G ribbon infringed plaintiff's '519 patent.  At the same time, defendant moved to dismiss the non-patent claims.  Defendant

stipulated to an injunction against the 81733G ribbon.  Based on the stipulation, the Court on March 8, 2005 granted in part plaintiff's motion for a preliminary injunction, which enjoined defendant from making or selling the 81733G ribbon.  The Court granted the motion to dismiss in part, dismissing as duplicative the claim of common law unfair competition.

Defendant then introduced a modified printer ribbon, the 250 ribbon.  The 250 ribbon is functionally equivalent to the 81733G ribbon.  The primary substantive difference is that the pins of the 250 ribbon are held much more securely in the hub. Plaintiff asserts that the 250 ribbon infringes the '625 patent.

On November 30, 2005, the Court granted defendant's motion for partial summary judgment on plaintiff's claim of infringement of the '519 patent.  The Court held that claims 8-15 of the '519 patent are invalid as indefinite and that defendant is not contributing to or inducing infringement of claims 1-7.  Plaintiff's non-patent claims and the claim of infringement of the '625 patent were not dismissed.  The 81733G ribbon is not accused of violating the '625 patent, so the Court's ruling absolved defendant of any patent liability relative to its 81733G ribbon.  On March 17, 2006, the Court vacated the Court's March 8, 2005 preliminary injunction based on the granting of defendant's motion for partial summary judgment.

The only remaining patent dispute concerns whether the 250 ribbon infringes the '625 patent.[1]  Defendant has now filed two motions for summary judgment of invalidity,

---

[1] The counts remaining in this action are for infringement of the '625 patent (Count II), violation of the Lanham Act Section 32 (Count III), violation of the Lanham Act Section 43(a)

(Footnote continued on next page.)

claiming that the '625 patent is invalid based on prior invention and in view of the '519

patent.  Defendant also moves for summary judgment of no damages on Counts II – VI

and asserts that plaintiff is therefore not entitled to a jury trial.

## ANALYSIS

## I.      STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material

fact and when the moving party can demonstrate that it is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit,

and a dispute is genuine if the evidence is such that it could cause a reasonable jury to

return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

(1986).  A court considering a motion for summary judgment must view the facts in the

light most favorable to the non-moving party and give that party the benefit of all

reasonable inferences that can be drawn from the facts.  *Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     MOTION  FOR  SUMMARY  JUDGMENT  OF  INVALIDITY  BASED  ON
##         PRIOR INVENTION

Defendant argues that it is entitled to summary judgment because an employee of

plaintiff, Gary Lenz, is a prior inventor of the subject matter of the '625 patent.  The

general rule of priority is that only the first to invent is entitled to a patent.  *Apotex USA,*

---

(Footnote continued.)

(Count IV), violation of the Minnesota Deceptive Trade Practices Act (Count V), and violation
of the Minnesota Unlawful Trade Practices Act (Count VI).

*Inc. v. Merck & Co.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001). Invention requires both conception and reduction to practice. *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986). An exception to this rule is that the inventor who is first to conceive but second to reduce to practice is entitled to the patent if he acted diligently in reducing the invention to practice. 35 U.S.C. § 102(g).

Defendant bears the burden of proving invalidity by clear and convincing evidence. *Apotex*, 254 F.3d at 1036. In the context of this motion, defendant must show that Lenz was the first to reduce his invention to practice, or if he was second to reduce to practice but the first to conceive the idea, that he exercised reasonable diligence in later reducing the invention to practice. Constructive reduction to practice occurs when a patent application is filed. *See Medichem, S.A. v. Rolabo*, 437 F.3d 1157, 1169 (Fed. Cir. 2006). Actual reduction requires a physical embodiment of the invention that meets all of the patent limitations and that works for its intended purpose. *Slip Track Sys., Inc. v. Metal-Life, Inc.*, 304 F.3d 1256, 1265 (Fed. Cir. 2002).

Defendant presents a laboratory notebook entry indicating that Lenz had conceived of the subject matter of the '625 patent on December 21, 1998. Plaintiff disagrees that Lenz was the first to conceive of the idea, primarily relying on the testimony of Oliverio. Oliverio testified that he began reverse engineering the '519 patent by September 1998, and that he and John Pomfret made a functioning prototype in December 1998. Reduction to practice of Oliverio's invention certainly occurred no later than July 27, 1999, which is the date the patent application by Oliverio was filed. The Lenz application was submitted after the Oliverio application, on October 18, 1999.

The parties have presented conflicting evidence on who first conceived of the subject matter of the '625 patent.  The parties agree, however, that Lenz was second to reduce his idea to practice.  As such, the only way that Lenz could be the first inventor is if he worked to diligently reduce his idea to practice.  *See* 35 U.S.C. § 102(g).  Defendant has produced no evidence that Lenz diligently worked to reduce his idea to practice, and plaintiff produced evidence that Lenz did not work on the idea until the patent application was filed.  Therefore, the Court cannot conclude as a matter of law that Lenz was the first to invent the subject matter of the '625 patent.   As such, the Court denies defendant's motion for summary judgment on invalidity based on prior invention.

## III.    MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON THE '519 PATENT

Defendant moves for summary judgment of invalidity in light of the '519 patent.  First, defendant argues that the claims in the '625 patent are anticipated by the '519 patent.  *See* 35 U.S.C. § 102(b).  Second, defendant argues that the claims in the '625 patent are obvious in light of the '519 patent.  *See* 35 U.S.C. § 103.

Patents shall be presumed valid.  35 U.S.C. § 282.  To overcome this presumption, defendant must demonstrate invalidity by clear and convincing evidence.  *See Apotex USA*, 254 F.3d at 1036.  Here, defendant's burden is especially difficult to meet because the '519 patent was before the Patent and Trade Office examiner during prosecution of the '625 patent.  *See Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990).

## A.      Anticipation

Anticipation can occur if the claim terms are expressly found in a single prior art reference, or the "claim limitation or limitations not expressly found in that reference are nonetheless inherent in it."  *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1347 (Fed. Cir. 1999).    The essential question is whether "one skilled in the art to which the invention pertains could take the description of the invention in the printed publication and combine it with his own knowledge of the particular art and from this combination be put in possession of the invention on  which a patent is sought."  *In re Elsner*, 381 F.3d 1125, 1128 (Fed. Cir. 2004).

Here, the issue is whether the '519 patent discloses that the pins can be "permanently secured" as in the '625 patent.  Defendant argues that because the '519 patent discloses that the pins should be "removable," it also implicitly discloses the inverse of being permanently secured.  This argument is based in part on the Court's claim construction, which essentially defines "removable" as the opposite of "permanently secured."[2]

The Court has found no case law holding that something is expressly or inherently disclosed by disclosing the opposite.  Given the lack of case law support for defendant's proposition, the Court cannot conclude that defendant has proven by clear and convincing evidence that the idea of permanently secured pins was disclosed in the '519 patent.  As

_____

[2] According to this Court's claim construction, "removable" is "capable of being taken away from a position without damaging the surrounding structure."  *Fargo Electronics, Inc. v. Iris Ltd., Inc.*, 2005 WL 3241851, at *13 (D. Minn. Nov. 30, 2005).  "Permanently secured" is when "the pins cannot be removed without damaging the pin receiving plate."  *Id.* at *17.

such, the Court denies defendant's motion for summary judgment on the basis of anticipation by the '519 patent.

**B.     Obviousness**

A claimed invention is obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains."  35 U.S.C. § 103(a).  Unlike the anticipation analysis, "the mere absence from the prior art of a teaching or a limitation recited in the patent at issue is insufficient for a conclusion of nonobviousness."  *Merck & Co. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989).

Here, the issue is whether defendant has proven as a matter of law that the idea of permanently securing the pins in the '625 patent is obvious in light of the '519 patent that used removable pins.  The Court concludes that defendant has failed to submit clear and convincing evidence of obviousness.   Instead, its motion is based almost entirely on arguments made by its counsel.  *See Andersen Corp. v. Fiber Composites, LLC*, 2003 WL 21754817, at *7 (D. Minn. July 21, 2003) (denying motion for summary judgment of invalidity when defendant relied on arguments of counsel and failed to submit clear and convincing evidence of obviousness).   These attorney arguments are particularly unavailing because defendant produced no evidence about what a person of ordinary skill in the art would understand about these patents.  *See Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1381 (Fed. Cir. 2002).  Moreover, plaintiff has submitted a report prepared by its infringement expert identifying reasons why the asserted claims are not obvious.

Based on these considerations, the Court concludes that defendant has failed to sustain the heavy burden of establishing obviousness at this stage of the litigation, and its motion is therefore denied.

## IV.   MOTION FOR SUMMARY JUDGMENT OF NO DAMAGES FOR COUNTS II – VI

Defendant argues that plaintiff should be precluded from an award of damages. With respect to the non-patent counts, defendant asserts that plaintiff has not provided any evidence of damages and did not disclose its intention to seek wrongful profits. With respect to the patent counts, defendant asserts that plaintiff during discovery provided only a theory of lost profits damages, and that plaintiff is not entitled to lost profits because it cannot satisfy its burden of showing the absence of non-infringing alternatives. Defendant further argues that plaintiff is precluded from asserting damages under a reasonable royalty theory because it was not disclosed during discovery. Based on these arguments, defendant believes that plaintiff does not have a right to trial by jury because only equitable relief is at issue. *See Kemp v. Tyson Foods, Inc.*, 2001 WL 1636512, at *3 (D. Minn. Nov. 19, 2001). As explained below, the Court concludes that plaintiff is not precluded from recovering damages, so the Court denies defendant's motion for summary judgment of no damages for counts II to VI and refuses to strike plaintiff's demand for a jury trial.

### A.   Non-Patent Counts

The first issue is whether plaintiff can claim damages of defendant's wrongful profits. Violations of the Lanham Act or the Minnesota Unlawful Trade Practices Act

may warrant damages in the form of a defendant's wrongful profits.  *See Wildlife Research Ctr., Inc. v. Robinson Outdoors, Inc.*, 409 F. Supp. 2d 1131, 1134-35 (D. Minn. 2005).  However, defendant argues that damages under this theory should be excluded because plaintiff failed to disclose during discovery that it intends to seek these damages. Defendant has not articulated any specific prejudice from the lack of disclosure.  As such, the Court does not agree that plaintiff's discovery violation warrants exclusion of these damages.

Defendant further argues that plaintiff is not entitled to damages because plaintiff has not presented sufficient evidence of damages.  Courts preclude recovery only where the fact of damage is uncertain, not where the amount of damage is uncertain.  *Minnesota Pet-Breeders v. Schell & Kampeter*, 843 F. Supp. 506, 519 (D. Minn. 1993).  Plaintiff asserts that it has been damaged because defendant has entered a market where plaintiff was the only player and because defendant has been unjustly enriched by making profits on its "knock-off Fargo" ribbons.  Based on these assertions, the Court cannot conclude that damages should be precluded at this stage of the litigation.  However, the Court believes this issue is best handled, if necessary, in a motion in limine, so upon defendant's motion, the Court will address the issue again before trial.

### B.    Patent Counts

Defendant argues that plaintiff is not entitled to an award of lost profits because defendant had access to a non-infringing alternative during the period that defendant was selling the 250 ribbon.  *See Grain Processing v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999).  In *Grain Processing*, the Federal Circuit held that "an

acceptable substitute not on the market during the infringement may nonetheless become part of the lost profits calculus and therefore limit or preclude those damages." *Id.* at 1356.

It is undisputed that defendant developed the 250 ribbon solely as a substitute for the 81733G ribbon.  The Court finds that defendant could have kept selling the 81733G ribbon except for the fact that the 81733G ribbon  was the subject of litigation and an injunction.[3]  Because the Court has determined that the 81733G ribbon does not infringe the patent at issue, the Court concludes that defendant had access to a non-infringing alternative and precludes plaintiff from recovering lost profits from defendant's sale of the 250 ribbon.

Defendant further argues that plaintiff cannot recover damages in the form of a reasonable royalty because plaintiff did not disclose this theory of damages during discovery.  The Court finds that preclusion of damages is too harsh a remedy for this discovery violation, especially because defendant has failed to articulate specific prejudice.  Moreover, federal law provides for "damages adequate to compensate for the infringement, but in ro event less than a reasonable royalty for the use made of the invention by the infringer . . . ." 35 U.S.C. § 284.

---

[3] Plaintiff argues that there is a fact issue as to whether the 81733G ribbon was actually available to defendant.  The Court disagrees.  Defendant let its supply of the ribbons become depleted only because the 81733G ribbon was the subject of litigation.  Defendant could have easily ordered more of the 81733G ribbon from its supplier during this time frame.  Indeed, ordering more 81733G ribbon would have been far easier than developing and ordering the substitute 250 ribbon.

In sum, the Court denies defendant's motions for summary judgment and will place this case on the Court's next available trial calendar.

## ORDER

Based upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant's Motion for Summary Judgment of No Damages for Counts II-VI and Striking Demand for Jury Trial [Docket No. 128] is **DENIED**.

2.      Defendant's Motion for Summary Judgment of Invalidity of Patent No. 6,152,625 Based on Plaintiff's Prior Invention [Docket No. 132] is **DENIED**.

3.      Defendant's Motion for Summary Judgment That The Asserted Claims of Patent No. 6,152,625 Are Invalid In View Of Patent No. 5,755,519 [Docket No. 136] is **DENIED**.


DATED:     December 29, 2006                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                       United States District Judge